UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

PHILLIP WASHINGTON,

                Plaintiff,

v.                                  **DECISION AND ORDER**
                                         09-CV-1126S

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

1.   Plaintiff Phillip Washington challenges an Administrative Law Judge's ("ALJ") determination that he is not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff alleges that he has been disabled since September 1, 1995, due to borderline intellectual functioning and Attention Deficit Hyperactivity Disorder. Plaintiff contends that his impairments have rendered him unable to work. He therefore asserts that he is entitled to supplemental security income under the Act.

2.   On March 9, 2007, Plaintiff filed an application for supplemental security income. His application was initially denied on August 1, 2007. Pursuant to Plaintiff's request, an administrative hearing was held before ALJ William R. Pietz on June 9, 2009, at which Plaintiff appeared with non-attorney representation and testified. The ALJ considered the case *de novo*, and on July 1, 2009, denied Plaintiff's application for benefits. On November 9, 2009, the Appeals Council denied Plaintiff's request for review. Plaintiff filed the current civil action on December 30, 2009, challenging Defendant's final decision.[1]

---

[1] The ALJ's July 1, 2009 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

1

3. On August 3, 2010, the Government filed a Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. On January 25, 2011, Plaintiff filed a Cross-Motion for Judgment on the Pleadings pursuant to Rule 12(c). The Government filed a response on February 10, 2011. This Court took the motions under advisement without oral argument.

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla" and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5. "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support

the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

  6. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Social Security Act. See 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

  7. This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8. While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9. In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since March 9, 2007 (R. at 10);[2] (2) Plaintiff's borderline intellectual functioning is a "severe" impairment within the meaning of the Act (id.); (3) Plaintiff's impairments do not meet the criteria necessary for finding a disabling impairment under the regulations (id. at 11); (4) Plaintiff has retained the residual functional capacity to perform the exertional demands of a full range of work, with limited exception (id. at 12);[3] and (5) given Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that he can perform. (Id. at 15.) Ultimately, the ALJ determined that Plaintiff was not disabled, as defined by the Act, at any time since his application was filed. (Id. at 16.)

10. Plaintiff raises two challenges to the ALJ's decision. First, Plaintiff challenges

---

[2] Citations to the underlying administrative record are designated as "R."

[3] The limited exception was that Plaintiff could understand, remember, and carry out only simple instructions. (R. at 12.)

the ALJ's conclusion that Plaintiff's residual functional capacity is fully captured in a cognitive restriction establishing that Plaintiff can understand, remember, and carry out only simple instructions and that this limitation does not significantly erode the occupational base. Second, Plaintiff challenges the ALJ's reliance on Social Security Ruling 96-9p, permitting a determination based on the Commissioner's Medical-Vocational Guidelines, rather than an individualized vocational expert opinion.

11. Plaintiff first argues that the ALJ improperly described Plaintiff's limitation and its effect on his occupational base. Plaintiff points to consultative psychologist Dr. Kevin Duffy's report that Plaintiff would not be able to manage his own funds due to limitations in judgment and insight. (R. at 193.) Plaintiff also relies on hearing testimony from Plaintiff's job coach highlighting Plaintiff's inability to maintain punctual and steady attendance at the various jobs Plaintiff has held.

12. Upon consideration of the record and the ALJ's findings of fact, this Court concludes that the ALJ's description of Plaintiff's limitation as able to "understand, remember and carry out only simple instructions" accurately accounts for Plaintiff's cognitive and judgment deficiencies. Dr. Duffy examined Plaintiff and specifically found that "claimant can follow and understand simple directions and instructions." (R. at 188.) Dr. Duffy further found that "claimant can make appropriate decisions" and could "relate adequately with others." (Id.) Plaintiff could also "deal appropriate with stress." (Id.) Dr. Duffy concluded that Plaintiff's cognitive problems were insufficiently significant to interfere with plaintiff's daily functioning. (Id. at 188-89.) These findings were echoed by State agency physician, Dr. M. Totin. Dr. Totin's summary conclusions listed Plaintiff's ability to understand, remember, and carry out detailed instructions as moderately limited. (Id. at

209.) The only other category in which Plaintiff had any limitation was his ability to set realistic goals or make plans independently of others, which was also marked as moderately limited. (Id. at 210.) By contrast, Plaintiff had no limitations in remembering locations and work-like procedures, or understanding and remembering very short and simple instructions, or in performing activities within a schedule, and maintaining regular attendance. (Id. at 209.)

Plaintiff's employment history reflects these descriptions. Plaintiff has independently secured part-time jobs and has retained them for significant amounts of time. Plaintiff was employed at Prior Aviation Services, Inc. for 8 ½ months without vocational assistance. (Id. at 14.) Plaintiff worked at a Hampton Inn as a laundry worker for 8 months. (Id. at 236, 265-67.) He has maintained employment at Red Lobster for at least 9 months, a job he secured on his own initiative. (Id. at 28, 33.) Although Plaintiff has struggled to adhere to his employments' attendance policies, the record reflects that Plaintiff himself has chosen to leave many of these jobs. For example, he left his job at Prior Aviation Services, Inc. because he was not getting enough hours. (Id. at 33.) He was terminated from the Hampton Inn after his third unexcused absence. (Id. at 239, 242, 267.)

Finally, the ALJ properly considered the Plaintiff's daily functioning in support of his determination. Plaintiff is able to bathe, clothe, and feed himself. (R. at 188.) He has a driver's license and makes use of his grandfather's car to visit friends and drive to and from work. (Id. at 23-24, 188.) He appears to have an active social life. (Id. at 188.) In consideration of these facts, there was no error in the ALJ determining that Plaintiff had the residual functional capacity to perform a full range of work, subject only to the limitation that he could understand, remember, and carry out only simple instruction.

13. Plaintiff second challenge is that the grid rules applied by the ALJ are not capable of adequately accounting for Plaintiff's cognitive, judgment, and insight limitations. Plaintiff cites various caselaw in support of his argument that borderline intellectual functioning is itself generally sufficient to require testimony by a vocational expert. Plaintiff argues that the grid rules provide no guidance for adjudicating claimants with individualized profiles of nonexertional cognitive and judgment restrictions, such as Plaintiff. Plaintiff concludes vocational expert testimony is necessary to complete the record and for Defendant to demonstrate that there are jobs in the economy that Plaintiff is capable of successfully and independently performing. In support of this argument, Plaintiff specifically points to his reliance on job coaching services.

14. "[T]he mere existence of a nonexertional impairment does not automatically require the production of a vocational expert." Bapp v. Bowen, 802 F.2d 601, 603 (2d Cir. 1986). Instead, "when a claimant's nonexertional impairments significantly diminish his ability to work – over and above any incapacity caused solely from exertional limitations – so that he is unable to perform the full range of employment indicated by the medical vocational guidelines, then the Secretary must introduce the testimony of a vocational expert." Id. "A nonexertional impairment 'significantly limit[s]' a claimant's range of work when it . . . so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." Zabala v. Astrue, 595 F.3d 402, 411 (2d Cir. 2010) (quoting Bapp, 802 F.2d at 605-06). Here, the ALJ determined that Plaintiff's limitation would have little or no effect on his ability to perform unskilled work at all exertional limitations. Moreover, this Court has concluded that the ALJ's determination was supported by substantial evidence. Therefore the ALJ committed no error in declining to

use a vocational expert.  See id.

Caselaw Plaintiff cites in support of his position does not alter this outcome.  In DeLeon v. Secretary of Health and Human Services, 734 F.2d 930, 935 (2d Cir. 1984), the ALJ virtually ignored findings that claimant was of low intelligence and had a borderline level of social comprehension.  Here, by contrast, the ALJ extensively referred to, and relied on, the evaluations by both Dr. Duffy and Dr. Totin.  Swope v. Barnhart involved a hypothetical posed to a vocational expert that neglected to reference a claimant's limited intellectual functioning.  436 F.3d 1023, 1025 (8th Cir. 2006).  As previously discussed, in the present case a vocational expert was not required, and thus the danger of such an expert neglecting to consider an impairment supported by substantial evidence did not exist.

15. Having reviewed the ALJ's decision in light of Plaintiff's arguments, this Court finds no error.  The decision properly discusses the opinions of Doctors Duffy and Totin, and support the ALJ's residual functional capacity assessment.  The ALJ further considered Plaintiff's employment background and daily functioning. Consequently, this Court finds that the ALJ's sequential evaluation of Plaintiff's claim is supported by substantial evidence in the record.  Because his findings were so supported, the ALJ was not required to make use of a vocational expert.

16. After carefully examining the administrative record, the Court finds that the ALJ sufficiently developed the record.  Furthermore, this Court finds that substantial evidence supports the ALJ's decision in this case, including the State agency physician's medical opinions and Plaintiff's testimony.  This Court is satisfied that the ALJ thoroughly examined the record and afforded appropriate weight to all of the medical evidence in rendering his

decision that Plaintiff is not disabled within the meaning of the Act.  Finding no reversible error, this Court will grant Defendant's Motion for Judgment on the Pleadings and deny Plaintiff's motion seeking the same relief.

    IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 6) is GRANTED.

    FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 15) is DENIED.

    FURTHER, that the Clerk of the Court is directed to close this case.

    SO ORDERED.


Dated:   December 17, 2011
          Buffalo, New York


                                       /s/William M. Skretny
                                       WILLIAM M. SKRETNY
                                       Chief Judge
                                       United States District Court